UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JACOB LEE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-2337** |
| **KEITH BICKHAM** | **SECTION "L"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.      Complaint (ECF No. 4)**

Plaintiff Jacob Lee ("Lee"), is an inmate housed in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana. ECF No. 4, ¶II, at 2. Lee filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against defendant RCC Deputy Warden Keith Bickham. *Id.*, ¶III(b), at 3. Lee simply alleges that, on May 4, 2024, Warden Bickham sprayed him with a chemical agent for no reason. *Id.*, ¶IV, at 3. As relief, he seeks a prison job and monetary damages. *Id.*, ¶V, at 4.

In support of his complaint, Lee attached copies of several medical request forms and documents from his disciplinary and administrative grievance proceedings which reflect the following information.[1] ECF No. 4-2. The disciplinary report about the May 4, 2024, incident

---

[1] The Court may consider attachments to a complaint in determining whether a non-frivolous claim for relief has been asserted. *See Lewis v. Guillot*, 583 F. App'x 332, 333 (5th Cir. 2014) (citing *Collins v. Stanley Dean Witter*, 224 F. 3d 496, 498 (5th Cir. 1999) (in determining whether a complaint fails to state a claim under 28 U.S.C. § 1915(e)(2)(b), the court is permitted to consider attachments to the complaint)).

indicates that Lee was charged with aggravated disobedience. *Id*., ¶8, at 4. Deputy Warden Bickham reported that he heard two inmates in Sun 4 Right tier yelling and cursing at each other. *Id*. at ¶10. Bickham reported that when he arrived at cell 2 of the Sun 4 Right tier, he saw Lee yelling and cursing down the tier at another inmate, Kyron Folse. *Id*. Bickham reported that he told Lee to stop yelling and creating a disturbance. *Id*. The report indicates that Bickham stopped at cell 5 as he continued his rounds, that he told Folse to stop yelling and causing a disturbance, and that Folse immediately complied. *Id.*

Bickham reported that as he continued to walk away, Lee began yelling and cursing at Folse again and causing a disturbance. ECF No. 4-2, ¶10, at 4. The report indicates that Lee continued to yell and curse down the tier even after Bickham returned to his cell and told him to stop. *Id*. Bickham reported that at this time he administered a short burst of chemical spray to Lee's upper torso to gain compliance with his orders. *Id*. Bickham further reported that as the spray took effect, Lee complied with Bickham's orders. *Id*. The report indicates that Lee was taken to see medical personnel and offered a shower and a new jumpsuit. *Id*. Bickham reported that Lee was already in investigative segregation when this occurred. *Id*.

The report indicates that Lee was found guilty and placed on 90 days disciplinary segregation. ECF No. 4-2 at ¶18; *id*. at ¶25. As part of his sentence, the RCC disciplinary board also assessed Lee with restitution to repay the cost of the chemical spray used in the May 4, 2024, incident. *Id*. at 5.

Lee filed a grievance complaint on or before May 15, 2024, which was accepted for review by the prison officials.² ECF No. 4-2 at 1. According to the First Step Response from RCC Warden Travis Day on June 10, 2024, there were multiple incidents involving Lee on May 4, 2024. *Id*. at 2. The Warden indicated that their investigation included a review of all documents and video footage of the incidents. *Id.* The Warden denied relief, noting that the administrative review determined that the use of force was not excessive or unnecessary and was within department guideline. *Id.* The Warden also noted that there was no evidence to support Lee's allegations. *Id.*

In the meantime, Lee sought medical care on May 23, 2024, claiming that his ankle was sprained and that his left hand was broken with pain. ECF No. 4-2 at 8. Lee also claimed that he had a cold and cough, "yellow" stuff burning his leg, and pain in his chest caused by mace. *Id*. On May 24, 2024, Lee sought medical care again for complaints of ankle and hand pain. *Id*. at 7. He also claimed to have a cold with coughing, "yellow stuff" was burning his leg, and pain in his chest caused by mace. *Id*.

On June 12, 2024, Lee responded with a request for second step review asserting that Bickham gave him a verbal order to stop yelling and came back a second time to give another order and then sprayed him with chemical agent. EFC No. 4-2 at 2. That same day, Lee submitted a handwritten letter captioned "ARP." *Id.* at 10. In that letter, Lee claimed that Warden Bickham arrived on the tier and gave him a direct verbal order to stop yelling at another inmate about sports. *Id*. Lee claimed that Warden Bickham came back a second time gave another direct order to Lee and then sprayed Lee with a chemical agent. *Id.* Lee complained that use of spray was excessive

---

² Lee did not provide a copy of his original grievance complaint leading to this response. The documents also include a medical care request dated May 1, 2024, which was prior to the alleged incident at issue here. ECF No. 4-2, at 6. In another sick call form dated June 30, 2024, Lee requested that his teeth be cleaned. *Id*. at 9.

force because he was not inciting a riot or making aggressive moves towards the bars while screaming obscenities. *Id.* He also stated that prison rules required three verbal orders before he could be sprayed. *Id.*

In the second step review dated July 22, 2024, the office of the Secretary of the Louisiana Department of Public Safety and Corrections affirmed the findings and conclusions reached by RCC officials. EFC No. 4-2 at 3. The response indicates that after review of the reports, investigative documentation, and Lee's medical records, the force used during the yelling incident was appropriate to bring Lee into compliance and stop his defiant behavior. *Id.* The response also indicates that the medical records revealed that Lee suffered no injuries in either of the May 4, 2024, incidents. *Id.*

## II.     Standards for Frivolousness Review

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d

882, 889 (5th Cir. 1998)).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28).  Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III.   Discussion

Lee alleges that Deputy Warden Bickham's use of chemical spray on May 4, 2024, constituted excessive force.  EFC No. 4-2 at 10.  Convicted inmates have a constitutional right under the Eighth Amendment to be free from the use of excessive force.  *See Whitley v. Albers*, 475 U.S. 312, 319-21 (1986); *Anthony v. Martinez*, 185 F. App'x 360, 363 (5th Cir. 2006).  However, not "every malevolent touch by a prison guard" rises to the level of an Eighth Amendment violation.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1993).  In considering excessive force claims, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id*. at 6-7.  The Supreme Court in *Hudson* has articulated the following relevant factors to consider when evaluating whether a use of force was excessive: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response.  *See Id*. at 7; *see also Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (reciting the "well-known *Hudson* factors").

While the "core judicial inquiry" in an Eighth Amendment excessive force allegation is the nature of the force used, "the extent of injury suffered by an inmate is one factor that may suggest

5

'whether the use of force could plausibly have been thought necessary' in a particular situation." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7). A "significant injury" is not a threshold requirement for establishing an excessive-force claim. *Wilkins*, 559 U.S. 37-38; *Hudson*, 503 U.S. at 7. However, the plaintiff must allege more than a *de minimis* injury, although "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999).

Under these factors, Lee has failed to state a non-frivolous claim against Deputy Warden Bickham. With regard to the second through fifth factors, Lee's supporting documentation indicates in his own words that he was actively defiant towards Deputy Warden Bickham's direct oral commands to stop yelling down the tier and cursing at the other inmate. *See* ECF No. 4-2 at 10. While there may have been no physical threat to the deputy warden, "that is not the only type of threat which must be considered." *Martin v. Seal*, No. 11-726, 2014 WL 2890125, at *6 (E.D. La. Jun. 25, 2014). A prisoner's "flagrant disobedience," if ignored without consequence, is sufficient disruption of prison order and security to warrant the use of reasonable force. *Martin*, No. 11-726 at *6. Requiring compliance with an officer's orders is part of insuring prison discipline and the federal courts should be extremely hesitant in "attempting to prohibit or limit the necessary means by which [prison guards] may carry out this responsibility." *Soto v. Dickey*, 744 F.2d 1260, 1270-71 (7th Cir. 1984).

Thus, Lee's active defiance after receiving direct orders to cease his behavior was sufficient cause for Deputy Warden Bickham to use the chemical spray to restore discipline and affect compliance with his orders under the *Hudson* factors. While courts have found that using pepper spray "in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain" is a violation of the Eighth Amendment, "the use of [chemical] spray is certainly not a

6

*per se* violation of the Eighth Amendment, even where the targeted inmate is locked in his cell." *Vizcayno v. Michael Unit*, No. 18-cv-440, 2020 WL 5536504, at *7 (E.D. Tex. July 26, 2020) (citations omitted). Lee was warned twice to stop yelling and cursing and chose to continue the behavior. ECF No. 4-2 at 4, 10. He did not stop until the burst of chemical spray was used. *Id*. Therefore, Lee has not alleged facts to state a claim of excessive force beyond that needed to restore discipline and order.

Most significantly, Lee has not alleged that he sustained any injury at all from the chemical spray to satisfy the injury factor of the *Hudson* test. The normal effects of being sprayed with chemical or pepper spray are considered *de minimis*. *Amos v. Jefferson*, No. 17-195, 2019 WL 950367, at *9 (E.D. Tex. Feb. 27, 2019), *aff'd*, 861 F. App'x 596 (5th Cir. 2021); *see, e.g.*, *Martinez v. Nueces Cnty., Tex.*, No. 13-cv-178, 2015 WL 65200 (S.D. Tex. Jan. 5, 2005) (simply being pepper sprayed, without some long term effects, is a *de minimis* injury), *aff'd sub nom.*, *Martinez v. Day*, 639 F. App'x 278 (5th Cir. 2016) (plaintiff's claims of excessive force, including tasing and pepper spray, fail where there was no evidence of cognizable injuries). The records submitted by Lee with his complaint also indicate that Lee had no injuries from the incident. *See* ECF No. 4-2. Lee also did not mention injury in his grievance complaints to the prison officials. *Id*.

The only reference to any injury by Lee was made almost three weeks after the incident in his sick call requests in which he claimed that his pain on his chest from mace.[3] ECF No. 4-2, at 7 (Request dated 5/24/24); *Id*. at 8 (Request dated 5/23/24). This vague reference to pain weeks after the effects of the chemical agent ended, he was allowed to shower, and was given new clothing fails to present a discernable physical injury under *Hudson*. *Hallman v. Director, TDCJ*,

---

[3] The report indicates that Lee was sprayed with one short blast to the chest. ECF No. 4-2, ¶10, at 4.

No. 20-cv-160, 2022 WL 10177692, at *6 (E.D. Tex. Sep. 19, 2022) ("In other words, simply stating that the defendant's action caused "pain," without more, does not state a discernable physical injury). Even so, courts have found more significant residual effects from chemical spray beyond mere "pain" to be *de minimis*. *Id*. (citing, *e.g.*, *Bradshaw v. Unknown Lieutenant*, 48 F. App'x 106 (5th Cir. 2002) (affirming district court's dismissal as frivolous of an excessive force claim where prisoner complained of "burning eyes, and skin for approximately 24 hours, twitching of his eyes, blurred vision, irritations of his nose and throat, blistering of his skin, rapid heartbeat, mental anguish, shock and fear as a result of the use of mace," finding that the prisoner "has not shown that he suffered more than a *de minimis* injury.")).

Considering Lee's complaint and documents under the fairest light, he has failed to allege sufficient facts to state a non-frivolous claim of excessive force. Therefore, Lee's complaint should be dismissed under 28 U.S.C. § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff Jacob Lee's 42 U.S.C. § 1983 complaint against defendant Deputy Warden Keith Bickham be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e) and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[4]

New Orleans, Louisiana, this  8th  day of November, 2024.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.